**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  CR 09-00973-1 JSW |
| Plaintiff, | **ORDER RESOLVING MOTIONS TO SUPPRESS** |
| v. | |
| DONALD THOMAS TOSTI, | |
| Defendant. | |

## INTRODUCTION

Now before the Court for consideration are two motions to suppress the fruits of warrantless searches and seizures filed by Defendant Donald Tosti ("Dr. Tosti").  The Court has considered the parties' papers, relevant legal authority, the record in this case, and has had the benefit of oral argument.  For the reasons set forth in the remainder of this Order, the Court finds that an evidentiary hearing is not necessary and HEREBY GRANTS IN PART AND DENIES IN PART the motions.  The parties shall appear for a further status conference on December 16, 2010, and shall submit a further joint status report by no later than December 9, 2010.

## BACKGROUND

On October 6, 2009, the Government filed an indictment in which it alleges that, on January 19, 2005, Defendant Donald Thomas Tosti ("Tosti") knowingly possessed child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). It is undisputed that on or about January 14, 2005, Dr. Tosti brought his computer to a CompUSA store in San Rafael, California

1  for repair.  It is also undisputed that on January 15, 2005, CompUSA employee, Seiichi Suzuki
2  ("Mr. Suzuki") attempted to repair Dr. Tosti's computer and, during the course of his repair,
3  discovered images that lead him to call the San Rafael Police Department to report his
4  discovery.  (*See* Docket No. 97, Declaration of Seiichi Suzuki ("Suzuki Decl."), ¶¶ 1-3; Docket
5  No. 94, Declaration of Daniel Blank (8/26/10 Blank Decl."), Ex. A (Police Report at 2).)

6  Detective George Schikore and Detective Ed Rudolph responded to CompUSA.  It is
7  undisputed that Detective Schikore was the first to arrive.  Both Detectives Schikore and
8  Rudolph viewed the file folder and images that caused Suzuki to call them and, based on their
9  observations, seized the computer and subsequently obtained a search warrant.

10  Dr. Tosti was not arrested until October 16, 2009.  On or about October 20, 2009, his
11  wife Annette Tosti ("Ms. Tosti") – now estranged – called Special Agent Elizabeth Casteneda
12  ("Agent Casteneda") of the Federal Bureau of Investigation, and turned over a number of items
13  that were located in an office within the Tosti home.  Over the next few days, Ms. Tosti turned
14  over more items, including a computer and computer media, to Agent Casteneda that were
15  located in the Tosti home.  (*See* Docket No. 32, Declaration of Daniel P. Blank ("1/28/10 Blank
16  Decl."), Exs. A-I.)  Ms. Tosti also signed forms consenting to searches of computer media.  (*Id.*,
17  Exs. C, H.)

18  On January 28, 2010, Dr. Tosti moved to suppress the evidence that Ms. Tosti turned
19  over to Agent Casteneda.  That evidence does not form the basis of any of the charges against
20  Dr. Tosti, and the Government had not yet stated that it intended to use the evidence at trial.
21  Accordingly, with the consent of the parties, the Court deferred resolution of the motion.  On
22  September 30, 2010, the Government filed its notice of intent to rely on this evidence at trial
23  under Federal Rule of Evidence 404(b).[1]  On August 26, 2010, Dr. Tosti moved to suppress the
24  evidence obtained in 2005.

25  The Court shall address additional facts as necessary in the remainder of this Order.

---

[1] At the hearing on this motion, the Government also advised the Court that it did intend to seek a superseding indictment based on some of this evidence, which it expects to be returned before the end of November, 2010.

2

## ANALYSIS

**A.   Motion to Suppress Fruits of Warrantless Search and Seizure in 2005 (Docket No. 93).**

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated...." U.S. Const. amend IV.  In general, a search conducted without a warrant is considered unreasonable, unless it is justified by an exception.  However, "[t]he Fourth Amendment limits searches conducted by the government, not by a private party, unless the private party acts as an 'instrument or agent' of the government." *United States v. Young*, 153 F.3d 1079, 1080 (9th Cir. 1998) (citing, *inter alia*, *Walter v. United States*, 447 U.S. 649, 656 (1980)); *see also United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (Fourth Amendment's protection applies only to "governmental action; it is wholly inapplicable to a 'search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'") (quoting *Walter*, 447 U.S. at 662 (Blackmun, J., dissenting)).  At the hearing on these motions, Dr. Tosti clarified that he does not contend that Mr. Suzuki was acting as a government agent at the time he initially reviewed the contents of Dr. Tosti's computer.  Thus, it is undisputed that the initial search of Dr. Tosti's computer was conducted by a private party.

Mr. Suzuki attests that he remembers "opening various folders and subfolders to look for images."  He and a technician "were randomly checking what was on the drive folders when we eventually encountered images that looked like child pornography." (Suzuki Decl., ¶ 2.) Mr. Suzuki does not specifically describe these images.  However, according to the police report, Mr. Suzuki advised the officers that "he discovered numerous photographs in the file of naked children and adult men.  He said the photographs depicted many graphic sex scenes of children." (8/26/10 Blank Declaration, Ex. A (Police Report at 2).)  Mr. Suzuki has not denied making that statement in the recent declarations submitted with the Court.

Mr. Suzuki does not state whether he viewed the images in question in thumbnail format or whether he enlarged them.  He does attest, however, that when Detective Schikore arrived on

the scene "there were numerous images appearing on the computer monitor in a very small 'thumbnail' format," and that Detective Schikore "directed [him] to open the images in a 'slide show' format so that they instead would appear as larger images viewable one by one." At Detective Schikore's direction, Suzuki "opened up the individual images in the 'slide show' format, using keys to move forward or backward as requested by [Detective Schikore]. These were the images of suspected child pornography." (Suzuki Decl., ¶ 4.) Detective Rudolph attests that he scrolled through the images that was active on the computer monitor when he arrived at CompUSA.

Dr. Tosti agreed that there is no evidence in the record to suggest that either Detective Schikore or Detective Rudolph viewed any filed folders or images, other than the folder and images that Mr. Suzuki had viewed. However, he argues that the two searches conducted by Detectives Schikore and Rudolph at CompUSA were conducted without a warrant, were unsupported by any exception to the warrant requirement, and, thus, the evidence obtained and all fruits thereof must be suppressed. The Government, however, argues that the "searches" conducted by Detectives Schikore and Rudolph did not violate Dr. Tosti's rights, because they did not exceed the scope of Mr. Suzuki's search and did not disclose any information as to which Dr. Tosti's expectation of privacy had not already been frustrated. The Court concludes that the Government has the better argument.

In his police report, Detective Rudolph stated that when he arrived at CompUSA, there were "more than two-dozen Thumbnail view graphical files maximized on the desktop." (8/26/10 Blank Declaration, Ex. B (Supplemental Police Report at 1); *see also* Declaration of Detective Ed. Rudolph ("Rudolph Decl."), ¶ 4.) According to Detective Rudolph, when he asked Mr. Suzuki what he considered child pornography to be, Mr. Suzuki responded by describing images that involved sexual activity, "rather than photographs of nude children that might not be pornographic." (Rudolph Decl., ¶ 4.) Detective Rudolph does not dispute that he scrolled through the images on screen, but he attests that when he viewed the images in thumbnail format, the images included scenes of obvious sexual activity between adults and minor children. (*Id.*, ¶ 5.)

4

Although there is a dispute about whether the Detective Schikore did - in fact - ask Mr. Suzuki to enlarge the images and whether Detective Rudolph had been advised of that fact, the Court finds this dispute to be immaterial to the resolution of the motion. Both the Detectives attest that they recognized the images as child pornography when the images were in thumbnail format. Mr. Suzuki also apparently recognized the images as such when they were in thumbnail format. Therefore, the Court finds, on this record, that even if the Detectives requested that Mr. Suzuki enlarge the images, they did not learn anything from enlarging the images that they had not already learned from viewing the thumbnail images.

Indeed, for the reasons set forth in its opinion in *United States v. Guindi*, 554 F. Supp. 2d 1018, 1024-25 (N.D. Cal. 2008), the Court finds the reasoning in *United States v. Runyan*, 275 F.3d 449 (5th Cir. 2001) to be persuasive. That is, the Court concludes that on the facts presented, this is not a situation where the Detectives reviewed more file folders or images than Mr. Suzuki had viewed. To the extent the Detectives viewed those images more thoroughly than Suzuki, the subsequent searches did not enable them to learn something that they could not have learned from the information provided by Mr. Suzuki.

Dr. Tosti argues that the Ninth Circuit has limited the Supreme Court's ruling in *Jacobsen* to containers that contain only contraband, and nothing else, and relies *United States v. Young*, 573 F.3d 711 (9th Cir. 2009) to support this argument. However, the search at issue in *Young* took place in the defendant's hotel room, which the court concluded was akin to a search in a defendant's home. The Ninth Circuit made clear that, on the facts before it, it would not "expand *Jacobsen's* decision *to warrantless searches of private residences.*" *Young*, 573 F.3d at 720 (emphasis added). In contrast, in this case, Dr. Tosti removed his computer from his home and brought it to CompUSA to be repaired. Therefore, the Court finds *Young* to be distinguishable on its facts.

The Court also finds Dr. Tosti's reliance on *United States v. Hanson*, 2010 WL 2231796 (N.D. Cal. June 2, 2010) to be inapposite. First, the initial search in that case was conducted by a government agent, rather than by a private party. Second, the Government never obtained a warrant to conduct the more thorough examination of the laptop in question in that case. In

5

contrast, in this case, the Detectives acted responsibly and, after viewing images as to which any expectation of privacy had already been frustrated as a result of Mr. Suzuki's review of the images, did not conduct a further search of Mr. Tosti's computer until they had obtained a warrant.

The Court finds that the Detectives did not exceed the scope of the private search and their subsequent review of the file folder and images did not enable them to learn more than they could have learned from the information provided by Mr. Suzuki. Accordingly, the Court finds that they did not violate Dr. Tosti's Fourth Amendment rights, and his motion to suppress is denied.

The Court shall now turn to Dr. Tosti's motion to suppress evidence the Government obtained in 2009 and which was provided to the Government by his wife.

**B.      Motion to Suppress Evidence Seized and Searched in 2009 (Docket No. 30).**

It is undisputed that Agent Casteneda did not have a warrant to seize or search the materials obtained she obtained from Ms. Tosti, after Dr. Tosti's arrest. The Government argues that the seizures and searches were justified, because Ms. Tosti had actual or apparent authority to consent. Consent is a well-recognized exception to the warrant requirement. *See, e.g., United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009).[2]

In order to meet its burden, the Government must demonstrate that Ms. Tosti had actual or apparent authority to turn over the materials found in the office and in other areas of the Tosti home to Agent Casteneda and to consent to a search of the computer and computer media. "It is well established that a person with common authority over property can consent to a search of that property without the permission of the other persons with whom he shares that authority." *United States v. Murphy*, 516 F.3d 1117, 1122 (9th Cir. 2008) (citing *Illinois v. Rodriguez*, 497

---

[2] The Government agrees that it bears the burden of proof on this motion and that it must prove valid consent by a preponderance of the evidence. As a threshold matter, the Court rejects Dr. Tosti's argument that Ms. Tosti was not competent and, thus, could not validly consent to search the items she provided to Agent Casteneda. Even if the Court were to accept Dr. Tosti's opinions about Ms. Tosti's mental state, all of the incidents that he describes took place well before October 2009. In contrast, Agent Casteneda attests that when she spoke with Ms. Tosti in October 2009, nothing about Ms. Tosti's demeanor suggested to her that she was not capable of consenting to the search.

6

1 U.S. 177 (1990) and *United States v. Matlock*, 415 U.S. 164 (1974)).³ Dr. Tosti contends that
2 Ms. Tosti did not own the home. However, she clearly shared the residence with him, and he
3 does not provide any evidence that she did not have mutual access and common authority over
4 their home at large. The Court therefore finds the Government has met its burden to show she
5 could validly consent to a search of the home and to turn over items found in common areas of
6 the home.

7 The fact that the Court has concluded that Ms. Tosti had mutual access to and common
8 authority over the Tosti home at large, does not necessarily lead to a finding that she could
9 validly consent to a search of the home office or of any containers located in the home office,
10 including computer media. *See United States v. Davis*, 332 F.3d 1163, 1169 (9th Cir. 2003).
11 "A third party has actual authority to a search of a container if the owner of the container has
12 expressly authorized the third party to give consent or if the third party has mutual use of the
13 container and joint access to or control over the container." *Id.* (quoting *United States v. Fultz*,
14 146 F.3d 1102, 1105 (9th Cir. 1998)).

15 "Under the apparent authority doctrine, a search is valid if the government proves that
16 the officers who conducted it reasonably believed that the person from whom they obtained
17 consent had the actual authority to grant that consent." *United States v. Welch*, 4 F.3d 761, 764
18 (9th Cir. 1993), *overruled on other grounds by United States v. Kim*, 105 F.3d 1579, 1580-81
19 (9th Cir. 1993); *see also United States v. Enslin*, 327 F.3d 788, 793-94 (9th Cir. 2003)
20 (government must show: (1) the officers believed an untrue fact; (2) it was objectively
21 reasonable for the officers to believe the fact to be true; and (3) if the fact was true, the person
22 providing consent would have had actual authority to consent). In order for the doctrine to

---

³ To the extent Dr. Tosti argues that Ms. Tosti's consent should not be valid because the "Government precluded [him] from being present," (*see* Docket No. 30, Mot. at p. 13 n.4) the Court rejects this argument. It is undisputed that Ms. Tosti sought out Agent Casteneda to turn over the evidence in question. This is not a situation - as Dr. Tosti implies - where there is "evidence that the police have removed the potentially objecting tenant from [a residence] for the sake of avoiding a possible objection." *See Georgia v. Randolph*, 547 U.S. 103, 121 (2006).

7

apply, "the facts believed by the officers to be true [must] justify the search as a matter of law." *Id.*

The Court concludes that even if Ms. Tosti did not have actual authority to consent to a search of the home office and the computer media, the Government has demonstrated that Agent Casteneda reasonably believed that Ms. Tosti had mutual use of and joint access to and control over both the home office and some - but not all - of the computer media and, thus, had apparent authority to consent both to turn over the items in question and to consent to searches of those items.

First, it is undisputed that Ms. Tosti is defendant's wife, albeit they are now in the process of seeking a divorce, and had resided with Dr. Tosti in their home for over 20 years. Agent Casteneda attests that Ms. Tosti advised her that she was responsible for cleaning that office. (Declaration of Elizabeth Casteneda ("Casteneda Decl.") ¶ 10.) Although Dr. Tosti disputes that fact, there is no evidence in the record to suggest Agent Casteneda had reason to believe that Ms. Tosti's statement was not accurate. (*See* Docket No. 42, Supplemental Declaration of Donald Tosti ("Tosti Supp. Decl."), ¶ 5.) Agent Casteneda also attests that she did not see any "signs, extra locks or other indicia" that the home office "was anything other than an area of the residence to which Annette Tosti had common access as she consistently maintained to me." (Casteneda Decl., ¶ 11.) Dr. Tosti's brother-in-law also submitted a declaration in which he attests that he did not see any locks, signs or other indicia that Ms. Tosti was precluded from accessing the home office. (Docket No. 36, Declaration of William Brewer, ¶ 6).

Dr. Tosti contends that he and his wife had "an explicit agreement that we would not enter each other's private work areas without first announcing ourselves and then getting permission." (Tosti Supp. Decl., ¶ 4.) However, he does not contradict the statements that the home office was unlocked and that there were no signs indicating that Ms. Tosti did not have permission to enter the room. The Court also notes that although Dr. Tosti attests that his children were aware of this arrangement (*id.*), none of his children have submitted declarations to that effect. Therefore, the Court concludes that it was not objectively unreasonable for Agent

8

Casteneda to believe that Ms. Tosti had mutual use and joint access to and control over the home office and, with exceptions noted below, items located in that office.

With respect to the computer and computer media, Ms. Tosti wrote on one of the two consent forms she executed that she and Dr. Tosti used the computer and the computer media. (*Compare* 1/28/10 Blank Decl., Ex. C *with id.*, Ex. H.)  With respect to the computer media that Ms. Tosti provided to Agent Casteneda on October 20, 2010, there is absolutely no evidence in the record that Ms. Tosti advised Agent Casteneda that she had common access to and mutual use of these items, a point that the Government conceded at oral argument.  Rather, in the FBI 302 Agent Casteneda prepared at the time, she stated only that Ms. Tosti "decided the external and internal computer hard drives she found in the back of a drawer in her residence were items she did not want in the home either."  (1/28/10 Blank Decl., Ex. A.)  Therefore, as to the computer media that Ms. Tosti provided to Agent Casteneda on October 20, 2009, which are itemized in Exs. A, B, and C of the 1/28/10 Blank Declaration, the Court finds the Government has not met its burden to show that Ms. Tosti had actual or apparent authority to consent to a search of those items.

In contrast, the Court concludes that the Government has met its burden to show apparent authority to consent to a search of the items listed in Exhibit H of the 1/28/10 Blank Declaration.  Ms. Tosti stated on the consent to search form that she and Dr. Tosti both used those items, and advised Agent Casteneda that she had used the computer with him to plan a trip.  Although Dr. Tosti disputes these facts, there is no evidence that Agent Casteneda had any information to the contrary at the time she searched those items.  Moreover, Agent Casteneda attests that none of the computer media she examined was password protected or encrypted, and Dr. Tosti has not refuted that statement.  (*See* Casteneda Decl., ¶ 9).  The fact that the computer and computer media listed in Exhibit H, were not password protected or encrypted, further supports a finding that it was objectively reasonable for Agent Casteneda to believe that Ms. Tosti had mutual use of and joint access to and control over those items.  *See, e.g., United States v. Smith*, 2010 WL 1949364, at *7 (D. Ariz. April 19, 2010) (noting that although defendant's wife had unlimited access to thumb drive belonging to her husband and could consent to turn it

9

1 over to police, she did not have actual or apparent authority to consent to a search of the drive,
2 which was encrypted), *report and recommendation adopted by* 2010 WL 1956690 (D. Ariz.
3 May 13, 2010).

4 Accordingly, with the exception noted above, the Court concludes that this is not a case
5 "where the surrounding circumstances could [] be such that a reasonable person would doubt"
6 the truth of Ms. Tosti's statements and not act upon them without further inquiry. *United States*
7 *v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000) (quoting *Rodriguez*, 497 U.S. at 188-89). For the
8 foregoing reasons, Dr. Tosti's motion to suppress is granted in part and denied in part.
9 However, if the parties do not resolve this matter, this ruling is without prejudice to Mr. Tosti
10 filing a motion to exclude any evidence not suppressed as a result of this Order, in connection
11 with his motions in limine.

12 **IT IS SO ORDERED.**

14 Dated: November 1, 2010

    JEFFREY S. WHITE
15  UNITED STATES DISTRICT JUDGE